IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER LOPEZ, *Plaintiff,* v. TRANSPORTATION WORKERS UNION LOCAL 234, et al. *Defendants.* | CIVIL ACTION NO. 16-05515 |

**PAPPERT, J.** June 19, 2017

**<u>MEMORANDUM</u>**

After he was terminated from his employment as a bus driver, Christopher Lopez sued the Southeastern Pennsylvania Transportation Authority ("SEPTA") and Transportation Workers Union Local 234 ("the Union"). In Count I of his Amended Complaint, he contends that SEPTA breached its Collective Bargaining Agreement ("CBA") with the Union by terminating him without just cause and failing to produce exculpatory evidence during his grievance proceeding. In Count II, he alleges the Union breached its duty of fair representation by failing to represent him adequately in the grievance process and refusing to take his case to arbitration. In Count III, which he brings pursuant to 28 U.S.C. § 1983, Lopez claims that both SEPTA and the Union violated his procedural due process rights under the Fifth and Fourteenth Amendments by discharging him without just cause and failing to comply with various procedural requirements contemplated by the CBA. Both Defendants filed motions to dismiss. For the reasons below, the motions are granted in part and denied in part.

1

# I.

Lopez began working for SEPTA as a bus driver in September 2008. (Am. Compl. ¶ 10.) On July 7, 2015, he stopped his bus at 11th and Walnut Streets in Philadelphia to let passengers board. (*Id.* ¶ 12.) Lopez alleges he said "come on, if you coming" to a seemingly intoxicated individual who was standing outside the bus, but the individual did not move. (*Id.*) According to Lopez, he closed the door and drove off without incident. (*Id.*) When he reached Vine Street, a Philadelphia police officer stopped him and asked if he was in an accident on Walnut Street. (*Id.* ¶ 14.) Lopez answered that he did not think so and had not noticed any issues with his bus. (*Id.*) The police officer directed the passengers to get on another bus. (*Id.* ¶ 15.)

Philadelphia police detectives interviewed Lopez and told him that an individual had been run over at 11th and Walnut. (*Id.* ¶ 16.) Lopez was given a drug and alcohol test, which came back negative. (*Id.* ¶ 17.) He was not charged with any crimes or issued any traffic tickets. (*Id.* ¶¶ 18–19.) He was told by a SEPTA supervisor to fill out an incident report and then released to go home. (*Id.* ¶ 20.) Though he continued to come into work, he was placed "on hold" until SEPTA could hold a hearing—he came into work every day and was in uniform but was not placed on the street. (*Id.* ¶ 21.)

One week later, SEPTA charged him with negligence and unsafe driving. (*Id.* ¶ 23.) The CBA between SEPTA and the Union establishes a grievance procedure consisting of four steps: (1) an informal hearing, (2) a formal hearing, (3) a hearing in front of SEPTA's Labor Relations Department and, should the Union decide to proceed to the final step, (4) binding arbitration. *See* (Am. Compl. ¶¶ 25, 26, 29, 63, 64, 66; SEPTA's Mot., Ex. A).

In July 2015, an informal hearing was held before SEPTA's Senior Director, Tom Ropas. At Lopez's request, he was represented by Union Representative Andre Jones, whose candidacy for Union Vice President Lopez had openly supported in previous Union elections. At the hearing, Ropas recommended discharge. (*Id.* ¶ 25.) Though SEPTA allegedly had in its possession a toxicology report of the alleged victim showing that he was intoxicated on the night of the incident, SEPTA failed to produce it. Jones demanded that SEPTA produce the toxicology report at the upcoming formal hearing. (*Id.* ¶ 57.) Lopez contends that SEPTA postponed the formal hearing every time Jones requested the report and ultimately failed to produce it. (*Id.* ¶ 57.)

In September 2015, Union officers substituted Tony Goins[1] for Andre Jones to represent Lopez at the formal hearing. (*Id.* ¶ 58.) Goins supported Willie Brown and Brian Pollitt, who defeated John Johnson and Jones in a prior Union election for President and Vice President, respectively, of the Union. Lopez opposed the Brown and Pollitt ticket. Lopez contends "[t]his was a deliberate move by the Union to breach its duty of fair representation of [him] in the subsequent grievance proceedings of SEPTA's termination of [him]." (*Id.* ¶ 58.)

Lopez alleges that he attempted to call Goins to discuss his case and have Goins request certain supporting evidence, but Goins failed to return his calls. (*Id.* ¶ 59.) When he did reach Goins, Goins was "very combative." (*Id.*) Lopez claims that he told Goins to insist that SEPTA produce the victim's toxicological report. He also allegedly told Goins to "bring to the hearing several records in the Union's possession where other members had been involved in a similar accident to the circumstances of the one

---

[1] In his Amended Complaint, Lopez refers alternately to Tony Goings and Tony Going. *See, e.g.*, (Am. Compl. ¶¶ 58–91). The Union spells it Goins, as will the Court. (Local 234's Mot., at 10).

3

involving [Lopez], but were not terminated by SEPTA, but [Goins] refused to obtain the information and did not bring the records to the hearing." (*Id.*)

Goins allegedly notified Lopez about the formal hearing just one day before it was scheduled to occur. (*Id.* ¶ 60.) Lopez asked Goins if SEPTA had produced the toxicological report; Goins responded that SEPTA had not but was "antagonistic" to Lopez and stated that he was proceeding with the hearing "with or without" him. (*Id.*) Lopez contends that Goins was "woefully unprepared" at the hearing and did not present information regarding alleged comparators that would have supported Lopez's case even though Lopez and Jones had previously advised him that such information was available and should be presented as evidence of SEPTA's inconsistent application of its disciplinary rules. (*Id.* ¶ 61.)

After SEPTA denied Lopez's grievance at the formal hearing, Lopez spoke with Pollitt, the Union's Vice President, and requested that Jones be reassigned to represent him at the next grievance step before SEPTA's Labor Relations Department because Goins "was not helpful at the formal hearing and was combative." (*Id.* ¶ 62.) Pollitt declined and "yelled at [Lopez] on the phone, saying he would not have Andre Jones represent [him] at the Labor Relations step without reasonable explanation." (*Id.* ¶ 63.) His "tone of voice and language on the phone" was allegedly antagonistic. (*Id.* ¶ 64.)

Lopez contends that at the Labor Relations hearing, Goins was again unprepared and failed to obtain or present either the toxicology report or the comparator evidence. (*Id.* ¶ 64.) SEPTA's Labor Relations Department denied the grievance. (*Id.* ¶ 65.) Lopez thereafter met with Union officials and asked the Union to

4

request arbitration. (*Id.* ¶ 67.) The Union, however, informed him that it had decided not to do so. (*Id.* ¶ 68.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). *Twombly* and *Iqbal* require the Court to take three steps to determine whether the second amended complaint will survive Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and

citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

## III.

### A.

In Count I of his Amended Complaint, Lopez claims SEPTA breached the CBA by terminating him without just cause and failing to provide the Union with all documents relating to the incident for which he was charged, including allegedly exculpatory evidence. (Am. Compl. ¶¶ 50, 52.)

#### i.

As an initial matter, the parties agree that SEPTA is a public employer and Lopez is a public employee, (SEPTA's Mot., at 6, ECF No. 12; Am. Compl. ¶ 1, ECF No. 9), and his claims are thus governed by Pennsylvania's Public Employee Relations Act, 43 P.S. § 1101.101, et seq. ("PERA"), rather than federal labor law. *See Martino v. Transport Workers' Union of Phila., Local 234*, 480 A.2d 242, 250–51 (Pa. 1984); *Se. Pennsylvania Transp. Auth. v. Pennsylvania Labor Relations Bd.*, 654 A.2d 159, 160 (Pa. Commw. 1995) ("As defined in Section 301 of PERA, 43 P.S. § 1101.301, SEPTA is a public employer, and the Transport Workers Union, Local 234 (Union), is an employee organization which is the exclusive representative of three bargaining units of SEPTA employees."). Section 903 of PERA mandates arbitration for all "disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement." 43 P.S. § 1101.903. Lopez's claim for breach of contract depends upon his entitlement

6

to rights provided by the CBA (just cause protection) and upon SEPTA's breach of duties imposed by the CBA (following certain grievance procedures). As such, Lopez has no breach of contract claim against SEPTA. *See Lopresti v. Cty. of Lehigh*, No. 12-2832, 2013 WL 2449190, at *9 (E.D. Pa. June 6, 2013), *aff'd*, 572 F. App'x 133 (3d Cir. 2014) ("Pennsylvania case law further establishes an employee has no cause of action against her employer for breach of contract where the employment relationship is governed by a collective bargaining agreement."); *Dubose v. Dist. 1199C, Nat. Union of Hosp. & Health Care Employees, AFSCME, AFL-CIO*, 105 F. Supp. 2d 403, 416 (E.D. Pa. 2000) ("Similarly, employees of public institutions cannot sue their employer for breach of contract damages.").

This is true even though the Union refuses to take his case to arbitration. *See Ziccardi v. Commonwealth*, 456 A.2d 979, 981 (Pa. 1982) ("[A]n employee has no right to sue his employer in equity and assumpsit for wrongful discharge where his union has refused to proceed to arbitration."). In Pennsylvania, "an aggrieved public employee cannot sue his employer for breach of a labor contract governed by state collective bargaining laws, even where his union has in bad faith refused to bring his grievance to arbitration, unless he shows, by specific facts, that the employer actively participated in the union's bad faith or that the employer conspired or colluded with the union to deny the employee his rights under the labor contract." *Garzella v. Borough of Dunmore*, 62 A.3d 486, 494 (Pa. Commw. Ct. 2013) (citing *Martino*, 480 A.2d at 250–51; *Ziccardi*, 456 A.2d at 981–82); *see also Lopresti*, 572 F. App'x at 137; *Dubose*, 105 F. Supp. 2d at 416; *Speer v. Philadelphia Hous. Auth.*, 533 A.2d 504, 506 (Pa. Commw. Ct. 1987).

Lopez does not allege that SEPTA and the Union colluded or conspired in any manner. Lopez's allegation that his efforts to obtain the toxicology report have been unsuccessful with both the Union and SEPTA is not sufficient to allege collusion. *See Runski v. Am. Fed'n of State, Cty. & Mun. Emps., Local 2500*, 598 A.2d 347, 351 (Pa. Commw. Ct. 1991), *aff'd sub nom. Runski v. AFSCME, Local 2500*, 642 A.2d 466 (Pa. 1994). And though he does contend that the Union breached its duty of fair representation and acted in bad faith by failing to prepare adequately for the hearing, present certain evidence and demand arbitration, he does not allege that SEPTA participated in the Union's decisions. *See Lopresti*, 2013 WL 2449190, at *9.

**ii.**

Lopez's claim that SEPTA breached the CBA by failing to produce the allegedly exculpatory toxicology report fails for the same reason. Moreover, "[t]he Pennsylvania Supreme Court has held that if a party seeks redress of conduct which arguably constitutes one of the unfair labor practices under PERA, jurisdiction to determine whether an unfair labor practice has occurred lies in the PLRB, and nowhere else." *Plouffe v. Gambone*, No. 11-6390, 2012 WL 2343381, at *7 (E.D. Pa. June 20, 2012) (citing *Hollinger v. Dep't of Pub. Welfare*, 365 A.2d 1245, 1248–49 (Pa. 1976)). Pennsylvania courts have interpreted section 1201(a)(5) of PERA to impose on public employers "a duty to furnish information which would enable unions to make informed decisions about whether to pursue such grievances." *Com. v. Com., Pa. Labor Relations Bd.*, 527 A.2d 1097, 1099 (Pa. Commw. Ct. 1987). The failure to produce relevant evidence requested by a union representative constitutes an unfair labor practice. *See id.*; *see also Com., Dep't of Corr., State Corr. Inst. at Muncy v. Com., Pa. Labor Relations*

8

*Bd.*, 541 A.2d 1168, 1170 (Pa. Commw. Ct. 1988) (holding that information requested by the union went to the crux of the case against the employee and the Commonwealth's refusal to provide that information violated PERA). Because SEPTA's failure to produce the requested evidence arguably constituted an unfair labor practice, the PLRB has exclusive jurisdiction over this claim. Thus, under either theory, Lopez's breach of contract claim against SEPTA must be dismissed.

**B.**

In Count II, Lopez contends the Union breached its duty of fair representation by, *inter alia*, failing to present evidence of comparators who were not fired, failing to obtain the allegedly exculpatory toxicology report and refusing to take his case to arbitration despite SEPTA's failure to produce the report. He requests that the Court compel the Union to take his case to arbitration.[2] He claims that the Union acted in bad faith and retaliated against him for opposing Brown and Pollitt and supporting Johnson and Jones in prior Union leadership elections.

**i.**

"A union bears a duty of fair representation to the members of the bargaining unit that it is certified to serve. In return, the members and employees are beneficiaries of a fiduciary obligation owed to them by the union." *Plouffe*, 2012 WL 2343381, at *9 (citing *Falsetti v. Local Union No.2026*, 161 A.2d 882, 895 (Pa. 1960);

---

[2] "Unlike a hybrid [duty of fair representation] claim for damages under federal law, to be entitled to equitable relief, there is no requirement under PERA that an aggrieved employee prove that he was discharged in violation of the collective bargaining agreement. To be entitled to equitable relief, the aggrieved employee must only prove that the Union acted in bad faith." *Dubose*, 105 F. Supp. 2d at 418 (citing *Hughes v. Council 13, Am. Fed'n of State, County & Mun. Employees*, 629 A.2d 194, 195–96 (Pa. Commw. Ct. 1993), *aff'd*, 640 A.2d 410 (Pa. 1994); *Martino*, 480 A.2d at 251).

9

*Case v. Hazelton Area Educ. Support Personnel Ass'n*, 928 A.2d 1154, 1158 (Pa. Commw. Ct. 2007)). A union may breach its duty of fair representation if its actions are "arbitrary, discriminatory, or in bad faith."[3] *Acosta v. HOVENSA LLC*, 529 F. App'x 297, 299–300 (3d Cir. 2013) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)); *see also Casner v. Am. Fed'n of State, Cty. and Mun. Emps.*, 658 A.2d 865, 870 (Pa. Commw. Ct. 1995). "To demonstrate bad faith, the plaintiff must show that the union had hostility toward plaintiff or the plaintiff's class and that the hostility negatively affected the union's representation of the plaintiff." *Danao v. ABM Janitorial Servs.*, 142 F. Supp. 3d 363, 371–72 (E.D. Pa. 2015) (quoting *Boyer v. Johnson Matthey, Inc.*, No. 02-8382, 2005 WL 35893, at *9 (E.D. Pa. Jan. 6, 2005)). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Acosta*, 529 F. App'x at 300 (quoting *Air Line Pilots Ass'n, Int'l*, 499 U.S. at 67).

When considering whether a union's actions fall within that range, courts "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n, Int'l*, 499 U.S. at 78. That standard "gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong," and even if its errors in

---

[3] Pennsylvania courts apply the same standard for a duty of fair representation claim as federal courts and federal case law serves as persuasive authority for the state law duty of fair representation claim. *See Connelly v. Steel Valley Educ. Ass'n*, 119 A.3d 1127, 1134–35 (Pa. Commw. Ct. 2015) (applying the standard set forth in *Vaca* and *Air Line Pilots Ass'n, Int'l*.); *Casner v. AFSCME*, 658 A.2d 865, 871 (Pa. Commw. Ct. 1995) (same); *see also Burse v. Com., Pennsylvania Labor Relations Bd.*, 425 A.2d 1182, 1184 (Pa. Commw. Ct. 1981) ("we look to federal decisions for guidance where, as here, there is no meaningful difference between the established policies of PERA and the National Labor Relations Act (NLRA)").

judgment may rise to the level of negligence. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45–46 (1998); *see also United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372–73 (1990) ("[M]ere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation."); *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970) (holding that "proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation" and a union has discretion to "settle or even to abandon a grievance, so long as it does not act arbitrarily"); *Weber v. Potter*, 338 F. Supp. 2d 600, 606 (E.D. Pa. 2004) ("[A] union has broad discretion to determine what issues to raise in a grievance proceeding and how those issues are to be raised.").

Furthermore, when reviewing representation at a grievance hearing, courts must give "due regard for the fact that both the advocates and the tribunal members are laymen," not lawyers. *Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 961 (3d Cir. 1981); *see also Deans v. Kennedy House, Inc.*, 998 F. Supp. 2d 393, 419 (E.D. Pa. 2014), *aff'd*, 587 F. App'x 731 (3d Cir. 2014). Thus, even if a plaintiff's allegations that the union failed to develop certain arguments are well-founded, they constitute mere disagreements over tactics and strategy, not a breach of the duty of fair representation. *DeFillippes v. Star Ledger,* 872 F. Supp. 138, 141 (D.N.J. 1994).

It nevertheless remains well established that a union must "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Marquez*, 525 U.S. at 44 (quotations omitted). To fulfill the duty of fair representation a union's

11

representation "must be vigorous enough so that available opportunities to present [a] grievance are utilized and sufficiently thorough so that the basic issues are presented in an understandable fashion." *Findley*, 639 F.2d at 961.  A union "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Lopresti*, 2013 WL 2449190, at *4 (quoting *Riley v. Letter Carriers Local No. 380*, 668 F.2d 224, 228 (3d Cir. 1981)).

**ii.**

Though Lopez emphasizes SEPTA's failure to produce the toxicology report, it does not appear that this failure can be attributed to the Union or its representation of Lopez—by Lopez's own account, both he and Jones in his capacity as Union Representative demanded that SEPTA produce the report.  Moreover, Lopez's allegation that the Union provided poor representation due to his choices in prior Union elections is a factually unsupported conclusion.

Lopez, however, also contends that the Union failed to present evidence of similarly situated employees who were implicated in analogous incidents but not fired, despite Lopez's and Jones's repeated attempts to inform Goins that the information existed and was already in the Union's possession.  While this omission may have constituted "mere negligence" or "mere disagreements over tactics and strategy," it is premature to conclude that at this stage.  "What constitutes 'bad faith' in a given case, of course, depends upon the circumstances." *Findley*, 639 F.2d at 959.  Without a full record, the Court does not know what arguments, if any, the Union made in support of Lopez and whether its presentation of the grievance can be characterized as "perfunctory."  *See Findley*, 639 F.2d at 960 ("Certain acts or omissions by a union may

12

in a proper case support a finding that the grievance was processed in a perfunctory manner. . . . It must be vigorous enough so that available opportunities to present the grievance are utilized, and sufficiently thorough so that the basic issues are presented in an understandable fashion. . . . If the panel had the essential facts before it, a decision adverse to the employee does not establish a breach of the duty of fair representation, even if a court would have come to a different conclusion in passing on the merits of the grievance."); *Pachick v. Friedman's Exp., Inc.*, 664 F. Supp. 944, 956 (M.D. Pa. 1986) (holding that union's failure to discover easily accessible news reports about the accident did not rise to level of bad faith where plaintiff could not show that its absence affected the panel's decision).

Lopez also claims that the Union's decision not to take his case to arbitration despite SEPTA's failure to produce the allegedly exculpatory report constituted bad faith. (Am. Compl. ¶ 36.) The Union contends that "[u]pon reviewing the facts, evidence and arguments made during the grievance procedure, the Union decided that Plaintiff's case could not be won in arbitration." (Local 234's Mot., at 10, ECF No. 11-2). The Union has discretion to "abandon a grievance, so long as it does not act arbitrarily." *Bazarte*, 429 F.2d at 872; *see also Connelly v. Steel Valley Educ. Ass'n*, 119 A.3d 1127, 1135 (Pa. Commw. Ct. 2015) ("[A] union has no obligation to arbitrate what it deemed to be an unwinnable case."). Without the benefit of a record showing "the facts, evidence and arguments made during the grievance procedure," the Court cannot make a determination as to the bad faith alleged by Lopez at this stage.

Read in the light most favorable to Lopez and without the benefit of a full record, the Amended Complaint alleges—albeit barely—conduct that plausibly rises to the

13

level of bad faith or arbitrary conduct. *See Danao*, 142 F. Supp. 3d at 372–73 (plaintiff alleging that union substituted new counsel at the last minute and failed to adequately prepare or advance a meritorious argument stated a claim). Lopez may thus go forward with his claim in equity against the Union and SEPTA.[4]

**C.**

In Count III of the Amended Complaint, Lopez contends that SEPTA and the Union failed to comply with the grievance procedures outlined by the CBA and the resulting procedural deficiencies violated his due process rights under the Fifth and Fourteenth Amendments. Public employment is a protected property interest when state law confers such interest by statute or contract. *See Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1398 (3d Cir. 1991). The Fourteenth Amendment prohibits states from depriving a person of life, liberty, or property without due process of law. *See* U.S. Const. amend. XIV, § 1.

**i.**

Lopez claims that SEPTA violated his procedural due process rights by supporting its termination decision with redacted materials, failing to provide him and the Union with all relevant and necessary documents and failing to permit him to

---

[4] Though his duty of fair representation claim is against the Union, Lopez has permissibly joined SEPTA as a Defendant. "In general, an employer may be joined in such an action when joinder is necessary to afford an employee an adequate remedy and ensure compliance with PERA's requirement of mandatory arbitration." *Dubose*, 105 F. Supp. 2d at 416. *See also Plouffe*, 2012 WL 2343381, at *10 (collecting cases); *Pa. Soc. Serv. Union v. Lynn*, 677 A.2d 371, 374 (Pa. Commw. Ct. 1996) (where union breaches duty of fair representation by failing to pursue wrongful discharge action, employer approaches status of indispensable party because dispute cannot be finally resolved without its participation).

question witnesses at the hearings.[5] (Am. Compl. ¶¶ 44, 47, 49, 50, 78–79, 83–85). SEPTA is subject to suit under Section 1983. *See Burnette v. City of Philadelphia*, No. 13-0288, 2013 WL 1389753, at *5 (E.D. Pa. Apr. 5, 2013); *Reynolds v. Se. Pennsylvania Transp. Auth.*, No. 12-1008, 2013 WL 3939513, at *2 (E.D. Pa. July 31, 2013); *Pokalsky v. Se. Pennsylvania Transp. Auth.*, No. 02-323, 2002 WL 1998175, at *3 (E.D. Pa. Aug. 28, 2002).

"[N]o single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause." *Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564, 1565–66 (3d Cir. 1995) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 483 (1982)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). A public employer may discharge its due process obligations by providing for facially adequate post-deprivation grievance procedures, even if the initial determination resulting in the deprivation was biased. *Dykes*, 68 F.3d at 1571; *see also id.* at 1572 n.6 (collecting cases); *Davis v. Se. Pa. Transp. Auth.*, No. 91-7001, 1993 WL 169864, at *5 (E.D. Pa. May 14, 1993) ("Plaintiffs were given prompt hearings, on adequate notice, and were fully informed of the nature of the charges against them.

---

[5] Lopez also contends that SEPTA violated his due process rights by terminating him without just cause. (Am. Compl. ¶¶ 81–82). This argument, however, conflates the merits of SEPTA's decision to terminate him with the adequacy of the procedures afforded him to appeal the decision. The Court's analysis of a procedural due process claim concerns only the latter; the former, as discussed *supra* in Section III.A, is subject to mandatory arbitration. *See Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992) (The Due Process Clause does not guarantee against "incorrect or ill-advised personnel decisions."); *Wilson v. MVM, Inc.*, No. 03-4514, 2005 WL 1231968, at *12 (E.D. Pa. May 24, 2005), *aff'd*, 475 F.3d 166 (3d Cir. 2007) ("To the extent that the USMS may have made an arbitrary decision on the merits, it is not a matter of procedural due process."); *id.* ("The deprivation of a protected property interest does not in itself violate procedural due process. Rather, it is the deprivation of such an interest without due process of law that is unconstitutional." (internal citation omitted)). Likewise, Lopez's allegation that the investigation that resulted in the charges against him was "a result-driven pretext," (Am. Compl. ¶¶ 78–79), is irrelevant to the question of due process. *See Skrutski v. Marut*, 288 F. App'x 803, 808–09 (3d Cir. 2008).

They had an opportunity to speak and to present evidence, and to be represented by appropriate Union officials. They cannot be said to have been denied due process by SEPTA merely because SEPTA denied reinstatement.").

"Absent an allegation that the post-discipline grievance procedures at issue were *per se* inadequate (or not followed or otherwise completely unavailable), . . . *Dykes* makes clear that there can be no departmental violation of due process under the circumstances." *Skrutski v. Marut*, 288 F. App'x 803, 808–09 (3d Cir. 2008). Notwithstanding the fact that SEPTA has established grievance procedures, Lopez's contention that SEPTA failed to follow the specified procedures in potentially significant ways is sufficient to state a claim against SEPTA. *Cf. Harris v. Se. Pa. Transp. Auth.*, 205 F. App'x 39, 41 (3d Cir. 2006) ("We held SEPTA's grievance/arbitration procedure adequate for due process purposes under similar circumstances, and there is no claim that SEPTA did not follow those procedures here. Thus, the District Court concluded that Harris lacked any claim under the Fourteenth Amendment.").

**ii.**

Lopez also contends the Union violated his due process rights by failing to arbitrate his termination and failing to insist that SEPTA produce the exculpatory evidence. (Am. Compl. ¶ 84.) This is insufficient to state a due process claim under § 1983 against the Union.

"A claim for a violation of civil rights under 42 U.S.C.A § 1983 can only be sustained if a defendant deprives a plaintiff of a federal constitutional or statutory right either as a state actor or while acting under color of state law." *Johnson v. Int'l Broth.*

*of Teamsters (Local 830)*, 256 F App'x 481, 483 (3d Cir. 2007) (citing *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006)). Generally, private parties can only be said to be acting under color of state law when the private party has acted with the help of or in concert with state officials, when the private party has been delegated a power "traditionally exclusively reserved to the State" or if "there is a sufficiently close nexus between the state and the challenged action of the private entity so that the action of the latter may be fairly treated as that of the State itself." *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994) (citation omitted).

"[L]abor unions are generally not state actors—they are private entities." *Johnson*, 256 F. App'x at 483. "[A]s to whether the union and its officials acted under color of state law, 'the ultimate issue is . . . [whether] the alleged infringement of federal rights is fairly attributable to the state.'" *Id.* (quoting *Jackson v. Temple Univ. of the Commonwealth Sys. of Higher Ed.*, 721 F.2d 931, 933 (3d Cir. 1983)). "[S]tate action may be found if a private party willfully participates in joint action or a conspiracy with the State or its agents to deprive a person of a constitutional right." *Plouffe*, 2012 WL 2343381, at *4 (citations omitted); *see also Wiggins v. String*, No. 10-1710, 2011 WL 499393, at *4 (D. N.J. Feb. 9, 2011), *aff'd*, 428 F. App'x 117 (3d Cir. 2011). "To allege such a conspiracy, the complaint must specifically present facts tending to show agreement and concerted action to deprive the plaintiff of his rights." *Plouffe*, 2012 WL 2343381, at *4.

Here, Lopez "has failed to set forth facts 'suggesting that the state was responsible for the Union or that the Union was acting under color of state law,' either

17

in its conduct of the grievance hearing or in its decision not to bring [his] grievance to arbitration." *Johnson*, 256 F. App'x at 483 (quoting *Jackson*, 721 F.2d at 933). Likewise, Lopez has not alleged that the Union conspired with SEPTA to deprive him of his rights or asserted any facts that would support such an inference. *See Wiggins*, 2011 WL 499393, at *4.

## IV.

For the reasons stated above, the Court grants SEPTA's motion with respect to Lopez's breach of contract claim and denies SEPTA's motion with respect to Lopez's due process claim. The Court grants the Union's motion with respect to Lopez's due process claim and denies the Union's motion with respect to Lopez's duty of fair representation claim.[6]

While Federal Rule of Civil Procedure 15 states that "leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Id.*; *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility" means that the amended complaint would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington*

---

[6] Notwithstanding the dismissal of the sole federal claim against the Union, the Court will exercise supplemental jurisdiction over the state law duty of fair representation claim against the Union because it arises out of the same "common nucleus of operative facts" as the remaining federal due process claim against SEPTA. *See Sparks v. Hershey*, 661 F.2d 30, 33 (3d Cir. 1981) ("We do not hold that where there is a common nucleus of operative facts, state claims must always be appended to the federal claim; but where . . . the district court does not set forth a persuasive, reasoned elaboration for dismissing the state claims, we are inclined to believe that the dictates of 'judicial economy, convenience, fairness to the parties, and comity,' are better served by recognizing pendent jurisdiction." (internal citation omitted)); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 787–89 (3d Cir. 1995) (same).

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). The Third Circuit Court of Appeals has left the decision of whether to grant or deny leave to amend within the sound discretion of the district court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (citations omitted).

Lopez has not requested leave to amend his Complaint. Even had he done so, the Court would decline to grant leave to amend his breach of contract claim against SEPTA and his due process claim against the Union as amendment of those claims would be futile.

An appropriate order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.